IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:21-cr-16-2 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| DARREN ALSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.     Introduction

Darren Alston, a defendant charged with participating in a 32-defendant drug-distribution ring, filed a Motion asking this Court to revoke an order from Magistrate Judge Keith A. Pesto ordering Alston detained pending trial. (ECF No. 335). Alston argues that Magistrate Judge Pesto failed to consider certain required Section 3142(g) factors, and that a weighing of those factors should lead this Court to order Alston's release pending trial. (ECF Nos. 335, 336). On November 18, 2021, Alston filed a "Supplement to Petition to Revoke." (ECF No. 503). In that document, Alston states that he is located at Cambria County Jail, that he suffers from asthma, that his cellmate at the jail has tested positive for COVID-19, and that he (Alston) has experienced a cough, congestion, and a sore throat, and he has been denied access to a doctor. (*Id.* at 2). Alston asks this Court to account for this situation when determining whether he should remain on pretrial detention. (*Id.*)

Based on the evidence before the Court, the Court finds that: (1) Alston has failed to rebut the presumption of detention contained in 18 U.S.C. Section 3142; and (2) even if Alston had rebutted that presumption, the Government has established, by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any person or

the community. Accordingly, the Court holds that detention is appropriate and **DENIES** Alston's Motion. (ECF No. 335).

**II.     Background**

A grand jury charged Alston with one count of conspiracy to distribute and possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin; 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine; 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack; 400 grams or more of a mixture and substance containing a detectable amount of fentanyl; 50 grams or more of methamphetamine; and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 846. (ECF No. 68 at 2–3).[1] This charge stems from an extensive wiretap investigation into a large drug-distribution ring in which Alston was alleged to have been a participant.

Pretrial Services filed a report ("PTS Report") recommending the Court release Alston on the following conditions: (1) that he refrain from violating federal, state, or local law while on release; (2) that he cooperate in the collection of a DNA sample if authorized by law; (3) that he advise the court, pretrial services office, or supervising officer in writing before making a change of residence or telephone number; (4) that he appear in court as required, and, if convicted, surrender as directed to serve a sentence that the court may impose; (5) that he sign an Appearance Bond, if ordered; (6) that he submit to supervision by and report for supervision to

---

[1] The Superseding Indictment, which was filed on November 9, 2021, charges Alston with the same offense. (ECF No. 453 at 2–3).

the U.S. Pretrial Services; (7) that he continue or actively seek employment; (8) that he remain within the Western District of Pennsylvania; (9) that he avoid all contact with any person who is or may be a victim or witness in the investigation or prosecution; (10) that he refrain from possessing a firearm or other weapons; (11) that he refrain from excessive use of alcohol; (12) that he not use or unlawfully possess a narcotic drug or certain other controlled substances, unless prescribed by a licensed medical practitioner; (13) that he submit to testing for a prohibited substance if the pretrial services office or supervising officer requires it; (14) that he participate in a program of inpatient or outpatient substance abuse therapy and counseling if the pretrial services office or supervising officer so directs; and (15) that he report, as soon as possible, every contact with law enforcement personnel to the pretrial services or supervising officer. (PTS Report at 7-9).[2]

On August 17, 2021, Magistrate Judge Pesto held an arraignment and detention hearing for Alston. (ECF Nos. 263, 264, 273). Magistrate Judge Pesto did not issue a finding regarding whether Alston presented sufficient evidence to rebut the presumption of detention for controlled substance crimes with penalties greater than ten years of imprisonment. (ECF No. 273 at 2). However, Magistrate Judge Pesto found that the Government had proved, by clear and convincing evidence, that no condition or combination of conditions could reasonably assure the

---

[2] At the time of Alston's September 24, 2021, hearing before this Court, this Court was only in possession of the first seven pages of the PTS Report. Those seven pages did not contain the conditions of release that Pretrial Services recommended with respect to Alston, but the report did conclude with the following: "Pretrial Services respectfully recommends the defendant be released on an unsecured bond under the following conditions: *Please see attached AO199.*" (PTS Report at 7). Following the hearing, the Court requested, and Pretrial Services Provided, the AO 199 form containing the conditions of release that Pretrial Services recommended with respect to Alston. In referencing these conditions, the Court does not deem them established, but it does offer them as representative of the conditions that Pretrial Services would recommend if the Court ordered Alston released pending trial.

safety of the community. (*Id.*). In so concluding, Magistrate Judge Pesto found that (1) the weight of the evidence against Alston, (2) the fact that he would face a lengthy period of incarceration if convicted, and (3) his prior criminal history all favored detention. (*Id.*) Magistrate Judge Pesto noted that there was evidence "presented at [the] hearing on August 17th of approximately 12 transactions directly attributable to Alston, including sales of crack, meth, and heroin." (*Id.* at 3). Magistrate Judge Pesto concluded that there are "no conditions short of incarceration that would deter defendant from drug transactions." (*Id.*).

Alston filed a "Petition to Revoke Order of Detention," as well as a brief in support, on September 8, 2021, asking the Court to reverse Magistrate Judge Pesto's Order of Detention and release him pending trial. (ECF Nos. 335, 336). The Court held a hearing on the Motion by videoconference on September 24, 2021.[3] (ECF No. 360).

### III.   Findings of Fact

The Court makes the following findings of fact by clear and convincing evidence:[4]

---

[3] Alston's counsel, as well as counsel for the Government and Alston himself, consented to conducting the hearing via videoconference. (ECF No. 564 at 2:12–19).

[4] In making these findings, the Court relies upon the transcript from the hearing before Magistrate Judge Pesto (ECF No. 354); the Government and Alston's proffers before this Court (ECF No. 564); and the PTS Report, which was based on information that Alston provided to Pretrial Services and that his girlfriend, Loretta Allen, verified. The parties offered no objection to these materials being part of the record. (ECF No. 564 at 6:9–14, 10:23–11:6).

Regarding the Government proceeding by proffer before Magistrate Judge Pesto and this Court (ECF Nos. 354, 564), the Court reiterates its previous decision that "the government may proceed by proffer at detention hearings under 18 U.S.C. § 3142." Memorandum Opinion and Order at 7, USA v. Hackett, No. 3:20-CR-07-14 (W.D. Pa. Feb. 9, 2021), ECF No. 907. This holding is consistent with the holdings of the United States Court of Appeals for the Sixth Circuit, the District of Columbia Circuit, the Second Circuit, the Eleventh Circuit, the Ninth Circuit, and the First Circuit. *Id.* at 5–6. Therefore, the Court will consider the Government's proffer in making its findings of fact in the present case. In doing so, it notes that the Government's witness, Detective Keirn, was present before Magistrate Judge Pesto and was cross-examined by Alston's counsel. (ECF No. 354 at 9). Moreover, Alston has not objected to the Government

1. Darren Alston was born in Philadelphia, Pennsylvania, and he lived there his entire life until moving to Johnstown, Pennsylvania in 2019. (PTS Report at 1).

2. Alston told Pretrial Services that he does not own a firearm. (*Id.* at 2).

3. Alston has maintained consistent employment since moving to Johnstown. Most recently, he worked at the Econo Lodge in Johnstown. (*Id.*).

4. Alston told Pretrial Services that his physical health is good, he is not under the care of a medical doctor, and he is not on any medications. (*Id.* at 3).

5. Alston's criminal history includes the following: a juvenile adjudication for burglary, a conviction for possession of marijuana, a conviction for simple assault and criminal mischief, and a conviction for public drunkenness and similar misconduct. (*Id.* at 3–6).

6. On October 6, 2016, because Alston violated the terms of his probation following his conviction for simple assault and criminal mischief, he was sentenced to 620 days imprisonment and 1 year of probation. (*Id.* at 5).

7. Alston listed 184 D Street, Johnstown, Pennsylvania as his address on his Pennsylvania driver's license. (ECF No. 354 at 6:8–23).

8. Investigators observed Alston at 184 D Street on dozens of occasions, and there was a pole camera at that location that connected him with the residence. (*Id.* at 6:21–7:1).

9. Law enforcement executed two search warrants at 184 D Street during the summer of 2021. (*Id.* at 7:2–7).

---

proceeding by proffer. (ECF Nos. 336, 354, 503, 564). However, he has contended that his cross-examination of the Government's witness calls certain of the Government's contentions into doubt. (ECF No. 336 at 3–5). In making its findings of fact and ruling on Alston's Motion, the Court will consider the contents of Alston's cross-examination of the Government's witness, as well as the Government's redirect of that witness.

10. On July 15, 2021, law enforcement executed the first search warrant at 184 D Street. Alston was not present at the time, and law enforcement found the following at the residence: packaging materials for narcotics, scales, ammunition, magazines, capsules, and suspected marijuana. (*Id.* at 7:8–12).

11. There was little to no furniture at 184 D Street when law enforcement executed the search warrant on July 15, 2021. (ECF No. 564 at 7:14–21).

12. On August 12, 2021, when law enforcement executed the second search warrant at 184 D Street, they observed evidence of drug trafficking in plain view and arrested Alston. While searching the residence, law enforcement found the following: various clear bags, two of them with unknown trace substances, one with an unknown pink powder, and one with a suspected powder, all of which were believed to be controlled substances; a bag of ammunition for various calibers; a gun holster; and empty stamp bags. (ECF No. 354 at 7:24–8:11).

13. During the course of the wiretap investigation, Alston was intercepted on defendant Blake Young's telephone, as well as the telephone of Mikal Davis, the lead target defendant in Johnstown. Young and Davis directly supplied Alston with drugs. (*Id.* at 6:16–20).

14. Between February 24th and June 30th of 2021, and based on wiretap interceptions during that period, Alston was identified on at least 12 distinct transactions with Mikal Davis and James Dotson, another defendant. (*Id.* at 7:13–17).

15. Between February 24th and June 30th of 2021, and based on wiretap interceptions during that period, Alston redistributed over 50 grams of crack cocaine, 4 grams of

methamphetamine, and approximately 11 grams of heroin and/or fentanyl. (*Id.* at 7:18–22).

16. Detective Thomas Keirn is a task force officer with the Federal Bureau of Investigation ("FBI"). (*Id.* at 9:23–10:1, 11:2–4).

17. On either March 12, 2021, or March 14, 2021, Detective Keirn was conducting surveillance when he received tips from the wire room that Mikal Davis was traveling to meet Darren Alston on Bucknell Avenue. Detective Keirn attempted to observe their meeting but was unable to do so. (*Id.* at 10:20–12:9, 16:19–21).

18. On March 17, 2021, Detective Keirn received a tip from the wire room that Davis and Alston were meeting, but he was unable to observe any meeting between the two men. (*Id.* at 12:10–22).

19. On April 8, 2021, Detective Keirn received a tip from the wire room indicating that Davis was meeting with Alston at a residence on D Street. Detective Keirn did not see the two men meet face-to-face, and he was unsure of whether Davis ultimately exited out of the residence at 182 D Street or 184 D Street. (*Id.* at 12:23–13:25).

20. On June 15, 2021, Detective Keirn received a tip from the wire room that Alston had spoken to Davis and that Alston wanted to see Davis regarding "food and ice." Detective Keirn and another detective witnessed Alston being dropped off in the vicinity of D Street. Alston then met in the street with several male subjects. However, Detective Keirn did not describe any of Altson's conduct in his report of the situation. (*Id.* at 14:12–15:16).

21. On another instance, Detective Keirn received a tip from the wire room that Dotson and Alston had spoken about a joint and were going to meet. However, no one saw Alston meet with Dotson. (*Id.* at 15:17–16:11).

22. There were task force members assisting in the surveillance of Alston and the other defendants in addition to Detective Keirn. Further, the task force members were able to confirm that certain defendants met and carried out transactions in ways other than physically observing them. For example, at times, the defendants themselves would confirm on their telephones that they had just met and dealt with a given quantity of drugs. (*Id.* at 17–19).

### IV.  Conclusions of Law

In cases where the maximum term of imprisonment exceeds ten years and involves a violation of the Controlled Substances Act, there is a rebuttable presumption that the defendant is to be detained pending trial. 18 U.S.C. § 3142(e)(3)(A).[5] To succeed in rebutting this presumption, a defendant must "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone,* 793 F.2d 559, 560 (3d Cir. 1986). In determining whether the defendant has rebutted the presumption of detention, the Court must consider the following factors: (1) the "nature and circumstances of the offense," including crimes involving violence or controlled substances; (2) the weight of the evidence; (3) the defendant's history and characteristics, including ties to the

---

[5] The Third Circuit has held that an "indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." *U.S. v. Sappa,* 799 F.2d 115, 119 (3d Cir. 1986). Here, Alston was indicted (ECF No. 68 at 2–3; ECF No. 453 at 2–3) for an offense for which the Controlled Substances Act prescribes a maximum term of imprisonment of ten years or more. 18 U.S.C. § 3142(e)(3)(A), 21 U.S.C. §§ 841, 846. Therefore, the rebuttable presumption applies to Alston.

community, substance abuse, physical and mental health, record of appearing at court proceedings, and whether the alleged offense occurred while on probation or parole, among others; and (4) the "nature and seriousness of the danger to any person or the community" posed by release. 18 U.S.C. § 3142(g).

If the defendant rebuts the presumption of detention, the government must then show that there is no condition or combination of conditions that will reasonably assure either the defendant's appearance or the safety of the community. §§ 3142(e), 3142(f). The government must prove that detention is necessary to ensure public safety by clear and convincing evidence, and risk of flight by a preponderance of the evidence. § 3142(f)(2); *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986). The same factors that guide the Court in determining whether the defendant has rebutted the presumption of detention guide the Court's analysis in determining whether the government has met its own burden. *United States v. Gidney*, No. 3:20-cr-7-12, 2020 WL 4340307, at *3 (W.D. Pa. July 28, 2020).

### A. Alston Has Not Rebutted the Presumption of Detention

The Court holds that, based on the evidence before it, Alston has failed to rebut Section 3142's presumption of detention. The first factor—the nature and circumstances of the offense charged—favors detention. Alston is charged with conspiracy to distribute and possess with intent to distribute heroin, cocaine, cocaine base/crack, fentanyl, and methamphetamine, an offense of which Congress recognized the seriousness by creating a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A). Alston has produced no credible evidence to contradict the seriousness of the offense, or the risk to the community that the offense poses.

The second factor—the weight of the evidence against Alston—also favors detention. The Government's proffer indicated that Alston's residence contained packaging materials for narcotics, scales, clear bags that were believed to contain controlled substances, ammunition, magazines, and other items. (ECF No. 354 at 7–8). Further, using wiretap interceptions, law enforcement determined that Alston engaged in at least 12 transactions with 2 other defendants, and that he eventually redistributed 50 grams of crack cocaine, 4 grams of methamphetamine, and approximately 11 grams of heroin and/or fentanyl. (*Id.* at 7:13–23).

As Alston notes, Detective Keirn did not physically observe Alston meeting with other defendants on four occasions, and Detective Keirn did not physically observe any drugs changing hands between Alston and anyone else on another occasion. (ECF No. 336 at 4–5; ECF No. 354 at 9–16). However, physical observation was not the only method available to law enforcement to discern Alston's activities, and Detective Keirn was not the only law enforcement officer observing Alston during his transactions with Davis and others. (ECF No. 354 at 17–19). Moreover, Alston has given this Court no reason to doubt the Government's proffer with respect to: (1) the evidence that law enforcement seized at Alston's residence, (2) the fact that wiretaps indicated that Alston engaged in at least twelve drug transactions with two other defendants, or (3) the fact that wiretaps indicated that Alston redistributed a significant amount of multiple controlled substances. (ECF Nos. 336, 354, 503). Therefore, the evidence of Alston's involvement in a conspiracy to distribute several controlled substances weighs heavily in favor of detention.

The third factor—the nature and characteristics of the defendant—also favors detention. Alston has resided and worked in Johnstown for approximately two years (PTS Report at 1–2), and he contends that he has lived with his girlfriend and two young children during that time.

(ECF No. 336 at 7). Further, Alston alleges that his cellmate at Cambria County recently tested positive for COVID, he (Alston) suffers from asthma, and he (Alston) has been denied access to a doctor. (ECF No. 503 at 2). While the Court is sympathetic to Alston's concerns about contracting COVID-19, and while his allegations do impact the Court's weighing of this factor, there are other considerations that the Court must account for in addition to Alston's family ties and physical condition. 18 U.S.C. § 3142(g)(3)(A) (explaining that Courts must consider, with respect to a defendant's history and characteristics, the "person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings").[6]

---

[6] With respect to Alston's allegations surrounding COVID, the Court makes three notes. First, Alston's exposure to his cellmate is now complete—he has been exposed to COVID-19 whether the Court orders him released into the general public or detained pending trial. Thus, Alston's remaining concerns include: COVID in the prison, his allegation that he has asthma, and his allegation that he has been denied access to a doctor. These contentions are insufficient to overcome the presumption of detention, especially when considered against the nature and circumstances of the offense he is charged with committing, the weight of the evidence against him, and the seriousness of the danger to the community that would be posed by his release. *Cf. United States v. Davis,* No. 2:20-CR-121-12, 2020 WL 4496581, at *1–3 (W.D. Pa. Aug. 4, 2020) (holding, in the context of a motion under 18 USC Section 3142(i), that the defendant's COPD and hypertension, allegation that he was not being provided with his medications, and speculation concerning possible exposure to COVID were insufficient to warrant release pending trial when the "risk of exposure exist[ed] whether he [was] detained or released," and there remained significant concerns regarding defendant's danger to the community and flight risk).

Second, the "CDC warnings (regarding asthma) address those who have been diagnosed with moderate to severe asthma" and those are the people who "may be at 'higher risk of getting very sick.'" *United States v. Webber,* No. 20-CR-375, 2021 WL 2529809, at *7 (W.D. Pa. June 21, 2021); *see also COVID-19: People with Certain Medical Conditions,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 14, 2021) (stating that "chronic lung diseases can make you more likely to get severely ill from COVID-19. These chronic lung diseases may include: Asthma, *if it's moderate to severe* …") (emphasis added). Here, there is no record evidence that Alston has moderate to severe asthma. (ECF Nos. 336, 354, 503, 564). Rather, Alston informed Pretrial Services that his physical health is good. (PTS Report at 3).

With respect to those other considerations, found in 18 USC Section 3142(g)(3)(A), Alston has a fairly extensive criminal history, and he has previously violated the terms of his probation, which led the state court to sentence him to a term of imprisonment. (PTS Report at 3–6). Further, when law enforcement searched Alston's residence, they found ammunition, magazines, and a gun holster, but no gun. (ECF No. 354 at 7–8). Because ammunition, magazines, and a gun holster have little if any purpose independent of a firearm, these discoveries permit the inference that Alston has access to a firearm that has not been recovered. In light of the fact that Alston may well have access to an unaccounted-for firearm, Alston's previous failure to abide by a court-imposed obligation is all the more concerning because he may well not abide by a condition of release that he refrain from possessing a firearm or other weapon. Therefore, the third factor also favors detention.

Finally, the fourth factor—the nature and seriousness of the danger to the community— likewise favors detention. This factor requires the Court to "assess the totality of the evidence presented." *United States v. Santiago-Pagan*, No. 1:08-CR-424-1, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009). Looking at the totality of the evidence before it, the Court finds that Alston presents a danger to the community if the Court does not order him detained pending trial. As noted earlier, when law enforcement searched Alston's residence on July 15, 2021, they found

---

Third, with respect to his allegation regarding access to a doctor, Alston states that he has "been denied access to a doctor." (ECF No. 503 at 2). This generalized contention leaves several questions unanswered. Was Alston denied access to a doctor on one occasion, or many occasions? Did Cambria County allow him to see a physician assistant or registered nurse rather than a doctor? Why did Alston want to see a doctor? Was it because he was sick and might have contracted COVID? In short, Alston's threadbare assertion that he was denied access to a doctor is an insufficient ground upon which to find that he has rebutted the presumption of detention. Still, the Court is concerned about this allegation, and it notes that if Alston is denied access to a doctor for an extended period of time, he is able to again seek review of his detention under 18 U.S.C. Section 3142(i). *See Davis*, 2020 WL 4496581, at *1–3.

evidence of drug-related activities, as well as ammunition and magazines. (ECF No. 354 at 7:8–12). When law enforcement searched Alston's residence on August 12, 2021, they again found evidence of drug-related activities, as well as ammunition and a gun holster. (*Id.* at 7:24–8:11). This evidence leads the Court to conclude that Alston not only conspired to distribute drugs, but that he was also party to a conspiracy that used weapons to further its goals. Because the evidence indicates that Alston engaged in activities that caused serious danger to the community, and then went back to those activities even after law enforcement searched his residence, this Court finds that Alston poses a serious danger to the community if he is not ordered detained pending trial.

Accordingly, the Court holds that Alston has failed to rebut the presumption of detention, and the Court denies Alston's Motion.

**B. Even if Alston Had Rebutted the Presumption of Detention, the Government Has Shown by Clear and Convincing Evidence that No Condition or Combination of Conditions Can Reasonably Assure the Safety of the Community**

For the reasons detailed above, *see supra* Section IV.A, the Court holds that, even if Alston successfully rebutted the presumption of detention, the Government has shown by clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of the public.

As noted, Alston is charged with a serious offense—conspiracy to distribute and possess with intent to distribute heroin, cocaine, cocaine base/crack, fentanyl, and methamphetamine. The weight of evidence is heavy, favoring detention. Alston's criminal history, the fact that he has previously violated the terms of his probation, and his potential access to a firearm(s), make harm to the community a serious possibility. (PTS Report at 3–6; ECF No. 354 at 7–8). Finally,

based upon all these findings, there is a substantial risk to the safety of the public if Alston is released.

The Court finds that the suggested conditions of release are inadequate to reasonably assure the safety of the community because Alston may still have access to one or more currently unaccounted for firearms—or at least be aware of their location—and may return to distribution of controlled substances. This finding is bolstered by the fact that Alston appears to have continued engaging in a drug distribution conspiracy even after law enforcement seized various items at his residence in July of 2021. Accordingly, the Court holds that the Government has presented clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the public were the Court to release Alston pending trial.

## V.    Conclusion

Therefore, after carefully considering the circumstances in this case, the Court finds that the factors set forth in 18 U.S.C. Section 3142(g) weigh in favor of detention.  Alston has not rebutted the presumption of detention, and even if he had, the Government has put forth clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of others were Alston released pending trial.  Accordingly, the Court denies Alston's Motion.

An appropriate order follows.